Good afternoon, your honors. May it please the court and counsel, my name is Jason Holden and I represent the defendant appellant in this matter, Shane Douglas Hoskins. Mr. Hoskins raises four issues on appeal, all of which center around whether the fairness of his trial was fundamentally compromised by the government's failure to provide him material impeachment information concerning the government's lead cooperating witness and whether or not the district court erred when it admitted highly prejudicial evidence, that being a seventeen-year-old conviction for cocaine distribution. Before we get to the main issues, I've got one other that's on my mind. There was an argument about sufficiency of evidence relating to the gun, because I get mixed up when I try to remember either the thirty-two was charged and they proved the nine or the nine was charged and they proved the thirty-two, according to the argument of Blue Breach. But it looked to me like the gun for which insufficiency of evidence is claimed was introduced. It was, your honor, and the argument with regard to it is count three and it is the thirty-two that was charged and it is the thirty-two that was introduced, there was no testimony at trial that that gun was involved in the conspiracy. Although Mr. Hoskins had it on his person at the time of his arrest on June 17th of 2004, he was arrested in a car full of antiques and the gun itself was that he used that gun during the commission of the conspiracy. Rather, the testimony at trial from Johnny Holmes, who was semi-involved in cooperating with the government's lead detective, Tom Lewis, was that when all of the parties went to the hotel room of Brian Weber, who was also... I thought the argument in Blue was not that it wasn't tied to the conspiracy, but that it was tied to the gun. There was no evidence... It was tied to Caliper Gun. No, your honor, that there was no evidence that it was tied to the conspiracy, your honor. Wasn't the conspiracy essentially over by that time? Yes, and that's really the essence of the argument, that the indictment in count three alleges that on June 17th, Mr. Hoskins carried the gun during the commission of a drug trafficking crime, and he was arrested on that day. But on June the 3rd, they had the drugs, and that safe, the drugs for which he was convicted. That is correct, your honor. So it seemed to me that this conspiracy, that this may have not been used in the courts or in relation to the crime. And if you look at the ninth jury instruction, it clearly contemplates that the gun be somehow used to effectuate the crime. It says the defendant knowingly used, and then it describes used if he or she has actively employed the firearm in relation to the crime charge. It further goes on to say that it's brandishing, that use includes displaying, bartering, striking with, firing or attempting to fire a firearm, and ends up by saying a defendant takes such action in relation to the crime if the firearm facilitated or played a role in the crime. Your position is that this gun found in the towel long after the police had seized the gun does not meet the description required for when a gun is used in relation to a gun trafficking crime? That is correct, your honor. And I would add that under United States v. Perez, the type of gun involved is an element of the crime. Your honor, the argument that I raise in the brief is that the only evidence that the government presented at the time of trial that Mr. Hoskins carried a gun during the commission of the offense is a 9mm, not the .32. And... Well, I'm not trying to mislead the court. I did not try the case. But I know that the argument that this gun was not associated with the drug trafficking crime was presented to the jury and also presented to Judge Molloy in the record. And my... Well, I believe it is in the brief, your honors. I don't think that I'm required to say... I believe my point is in the brief. Just page and line. I looked at pages 31 to 33 and I couldn't find it. Yes, your honor. I think that on page 32, okay, I make the argument that the government .32 revolver was used in... Sure. So I patiently went through the records since the government counsel didn't bother giving me a page number and tried to find out whether there was any proof of a Remington .32. And sure enough, it was introduced as evidence. But not tied to when Mr. Hoskins went to the hotel room? No, that was the issue. Okay. Or I would have looked for it. Well, I apologize, your honor. And I did try to make the point that the only evidence was the 9mm and in the alternative, if the government did introduce the .32 and the 9mm, both pieces of evidence, that the district court was required to have the jury find which gun was used during the commission of the crime. Yes, my client can obtain relief because his trial counsel made that exact argument before the district court. And essentially, your honor, that's the argument I was trying to make. I was pointing out to the court that the only evidence that the government presented was that a 9mm gun was used during the commission of the crime, not the .32 caliber as charged. And I'm not trying to mislead the court or dodge the court's questions. But the only evidence at trial was that Shane Douglas Hoskins had a 9mm tucked in his belt. I would have liked to know that that's what we were talking about when I prepared for argument. I assume that government counsel is now preparing and will be able to respond usefully to that, ideally with a page number such as I could not find in the brief. Counsel, I will point out to you, I read the court's instruction to the jury on that charge. It pretty much mirrored the Ninth Circuit. It left out a few things, but it clearly said this. The defendant is charged in this count of the indictment with using or carrying, possessing, brandishing, or discharging a firearm during and in relation to a drug trafficking crime in violation of Title 18 of the U.S. Code. Now, what is this evidence of another gun that did not match the description contained in the indictment that seems to me is irrelevant? When the jury is told specifically, they must find that he carried the gun shown in the indictment. I do not believe that is correct, Your Honor, for this reason. What is not correct? That the jury instruction needed to require, needed to have the jury find which gun he possessed during the commission of the drug trafficking crime. The only charge with possessing one gun in the indictment, that was at Renwick. Yes, but the only testimony that tied any gun to the commission of the offense was Johnny Holmes' testimony regarding a 9mm. What about the photograph of the other gun that was introduced into evidence? Yes, that gun was charged in the indictment, but there was absolutely no evidence from any witness at trial that that gun was used during the commission of the offense other than it was found on Mr. Hoskins, found in his vehicle when he was arrested. What would you have the trial judge do in that situation, where you have a charged gun and an uncharged gun? What is it you want him to tell the jury? Well, I would have him ask the jury or submit a jury instruction saying which gun did Mr. Hoskins use during the commission of the offense, the 9mm or the .32 caliber, and let them check off. And if they check off the 9mm, then he, by implication... Well, that would be contrary to what's in the indictment. It would be contrary. You would probably have an instruction to the jury that this defendant is only charged with possessing a .32 charged in the indictment, and they must determine that based on the evidence presented. That would be better than my idea, Your Honor. It seems to me that this... I don't know why the evidence of this other gun got in at all. Do you? I do not, Your Honor. All I know is that the testimony came from Johnny Holmes, who was a government witness, who alleged that Mr. Hoskins had a 9mm tucked in his belt. It's funny having all these suggestions about what might be a good idea without a reference to where the suggestion is made to the district judge and the abuse of discretion by not checking. Well, Your Honor, I did point that Mr. Hoskins moved for a judgment of acquittal pursuant to Rule 29, and I do cite to excerpts of Record 940, which is the page concerning this count, Your Honor, and that's on page 31 of my brief, and that's the transcript page 846. In any event, Your Honors... Well, let's see. I'm looking there, and I still get the argument. The defense lawyer says, I'm making Rule 29. I don't think there's various testimonies. Every witness has said he didn't possess a gun. The only gun found, which Officer Lewis testified, was empty, wrapped up in a towel in the back of the antiques, and did not have a thing to do. He was not found with any drugs. Oh, I see. You're saying that could be read to mean, yeah, he had a gun, but it wasn't during any relation to the crime. Yes, Your Honor, and that's why I point to the specific trial testimony of Johnny Holmes, that the only gun that could have been argued to have been used during the commission of the crime was the 9mm, which was not charged in Count 3. I guess there, we apply the Jackson standard, and look at Danny DeWebber, and that must be the prosecutor, and he's saying there's a gun there, so the jury would think, and this was the gun he carried in his belt. Yes, Your Honor, and that's why I make the alternative argument that if there is not sufficient, if the court finds that there was sufficient evidence, that there at least had to have been a jury instruction that required unanimity as to what gun he actually possessed, because Perez requires that the type of firearm is an element of the offense. Okay, and you ask for that? I note that when a jury instruction is not requested, it's subject to plain error, and my argument is that that's plain error under Perez, Your Honor. It has to be affecting a substantial right that has to meet all, I think it was five or a lot of criteria. Yes, and I believe that a case like this does meet all of those criteria. Effectively, what you have here is Mr. Hoskins found guilty of a crime that was not charged. Let me ask you about something else that I think you went off with. I have a little trouble with letting the old conviction in because he basically says there's nothing for 17 years, and his conduct that led to that drug conviction is 16 years, 7 months ago, within the boundaries of one year. Yes, Your Honor. However, I just couldn't see any prejudice to it. I thought, take a guy who's engaged in torture, and you say he's going to be prejudiced by a 17-year-old conviction. I just don't buy it or anything. If the only conviction is for conduct 17 years ago, it tends to show that the defendant is shaped up rather than that he's a bad fellow. I can tell you the prejudice, Your Honor. If the court looks at the one count of acquittal, it is Count 6, the conduct alleged against Tina Gibson. And Tina Gibson was the government's lead cooperating witness here. And the jury acquitted the conduct of that count, and that count essentially alleged that Mr. Hoskins had physically threatened her. The whole theory of Mr. Hoskins' case is that this was not my safe. This safe belonged to Miss Tina Gibson. The jury believed enough to actually acquit Mr. Hoskins on Count 6. When you tie that in to the fact that Mr. Hoskins took the stand and testified, there was a chance that the jury would believe Mr. Hoskins in his argument that the safe wasn't mine, it was Miss Gibson's. But once you bring in a 17-year-old cocaine distribution conviction, that is like a bombshell, and the jury at that point is not going to believe anything that Mr. Hoskins has to say with relating to whether the safe was his or Miss Gibson's. I don't believe he lied. I do not believe he lied, Your Honor. On direct examination testimony, he said, I haven't used drugs for 17 years except for some pot. That's correct, Your Honor. Well, Your Honor, I think you have to read his statement in context, and I don't think it was an unequivocal and expansive denial of drug use. What he actually said was, I admit that I'm a small user of this stuff. I may have smoked seven joints in the last 17 years. I mean, you know, I'm not into the drugs. I'm just into building a business for my family. And I think that quote taken in context with the fact that the 17-year component, that that's really what we are trying to impeach his credibility with, is the fact that he said 17 years. Well, yeah, I did a lot of bad things when I was a kid, but it's been a long time and I don't do that stuff anymore. And I've seen it work with armed robberies and dope and all kinds of stuff. Well, Your Honor, I think the no prejudice is essentially a harmless air-type argument, and this court... This torture is so dramatic.  No, you don't, Your Honor. I agree. But, you know, I think that the jury still had the opportunity to believe that these were Ms. Gibson's drugs. And you have to understand that the torture component of the case revolved into Mr. Hoskins' theory that I was offered a reward by Ms. Gibson to obtain this safe. And everything I was doing was to help Ms. Gibson get her drugs back. The excuse for the torture is that he's helping Tina get her drugs back. No, I'm saying that the component of the bombshell, the previous conviction that's 17 years old, makes him unbelievable on all of it, and then your point that this man was in charge of the torture rather than getting the drugs back from Ms. Gibson, Your Honor. But I would also note that the admission of... Do you think this violates Rule 609? If he truthfully testified on direct, then I think it violates Rule 609. If the court takes the position that he did not tell the truth, then I think we're truly under a 607 analysis, which is impeachment by contradiction. My argument on appeal is that he was being truthful because November 10, 1988, to December 8, 2004, is really... He's in his 17th year. He's not trying to mislead the jury. He didn't say 25 years. He didn't say 20 years. I think I probably would have just let it in, said to a juror if I'd been dependent, and said to a juror... Do you think if you had done something... If you were asked if you'd ever gotten a traffic ticket and said not for 17 years, and it turned out you'd been speeding 16 years, seven months ago, you might have said not for 17 years? Well, possibly, Your Honor, but I think if you did decide to let that in, the fact that it's a previous cocaine distribution conviction, and now he's charged with distributing methamphetamine... But if you tell the jury not for 17 years, it means, okay, but 18 years ago, yes? Well, I think what the jury may believe is you just didn't get caught for 17 years. And I think that's really the harm here, is that once into drugs, jurors believe you're always into drugs, and they convicted him of all the counts relating to the drug distribution. And I think the court has... What's that, Your Honor? You don't think on a jury of 12, some of them used drugs 17 years ago? And maybe they have, and maybe they understand how hard it is to quit, and some may never have quit. I don't know. I think that's speculation. But I do know this, that when you're representing a defendant in court in front of jurors from Montana, and they hear cocaine and meth, you're done. And the fact that he's charged with methamphetamine, the fact that he was previously convicted for cocaine distribution, effectively took any argument that he is believable and threw it out the door. And, Your Honor, I have to question why, given the facts of this case, they went after... The government sought to introduce this information. If it was such a case where there was so much evidence, this testimony was superfluous. It wasn't necessary. They did it because, in my belief, it was a close case. And there is no harm here, or there is harm, Your Honor. And I believe I'm over. It tells me to stop. Keep your power dry, in case we give you another minute. Okay. Thank you, Your Honor. May it please the Court and Counsel, I am Josh Van de Wetering from Missoula, Montana, the District of Montana, and I would start by apologizing, Your Honor, for not having the page citation to the introduction of the gun, which, as you obviously know now, is page 753 of the record, where the United States introduced the gun itself, as well as photographs of the gun, that we've included in our supplemental excerpts of record. Working backwards from the issue of the impeachment, with respect to Mr. Hoskins' prior conviction, of course, mislead the jury is exactly what Mr. Hoskins is trying to do. He just calculated a little bit wrong in his head. Can we back up to the gun for just a second? Sure. As you know, I didn't understand the argument. I thought the argument was they didn't introduce the gun, and that now I know the argument is they didn't put out any proof that the gun was related to the drug crime. And what proof is there that the gun was related to the drug crime? Well, Your Honor, I would refer the court first to the superseding indictment in the case. The sort of broad conspiracy charge is dated January 2003 through, on or about June 17, 2004, and that's where, Judge Rafiti, I'd respectfully disagree with you. Although the case centered on the safe and the drugs in the safe, it was a broader conspiracy than that. Catching the safe is where we got lucky. Yes, Your Honor, and I refer the court there to page 752 through 754 of the record. Well, there was cash, Your Honor. With the defendant in his vehicle, there was approximately $15,000 in cash in addition to the gun. Yes, Your Honor. $15,000 in cash in the same car as where the gun was found? That's correct, Your Honor. And for that reason, we allege the conspiracy all the way through that date, which is also the date that the gun was found. You're not explaining specifically why that constitutes an act in furtherance of the conspiracy when all that remained was the arrest of this defendant. Well, the defendant didn't know the arrest was coming, Your Honor. Our theory, at least, is that he's carrying the gun to protect his money. His money, of course, comes from selling drugs. So the conspiracy is ongoing. And you're saying from those facts, you can conclude that he used the gun in relation to a drug-trafficking crime? Yes, that's correct, Your Honor, the drug-trafficking crime being conspiracy. So he has $15,000 in cash in the car along with the .32 that he was charged with? That's correct, Your Honor. And the jury just has to infer that the $15,000 is proceeds from selling drugs and the gun is to protect the cash? That's correct, Your Honor. And I would also note that we sought forfeiture on that count. Mr. Hoskins, I believe, conceded that, the forfeiture issue, somewhere in the course of the trial. I'm sorry I don't have that at my – Forfeiture of the money? Of the money, yes, Your Honor. So as a factual matter, I think the 924C count is a solid count. The conspiracy goes all the way up until Mr. Hoskins gets caught. If he doesn't get caught until the day after that – It's not so much the conspiracy. It's the use of the gun in relation. And I go back to the final sentence in the Ninth Circuit recommended jury instruction. A defendant takes such action in relation to the crime if the firearm facilitated or played a role in the crime. The crime is conspiracy. Now, did it facilitate or play a role in that conspiracy, the empty gun that was found? And it did, Your Honor, because it's there to protect the money. Pointing an empty gun at a person is just as threatening as pointing a full gun. Wait a minute. On the pointing, as I remember, there was a Supreme Court case about five years ago under a different section, Section 924, that required use of a gun, and it said for use there has to be brandishing or something like that. Correct. I think you're charging under a different section for during and in relation to, but not use. Am I right? Yes, yes. You're correct, Your Honor. The statute, I believe, was amended after that case to include possession of the gun in furtherance of the crime, and that's what we alleged in the indictment. But look, the current instruction talks about possessing, brandishing, discharging a gun. It suggests that all of the language used in this instruction relating to this particular offense suggests that it is used at the time of the commission of some specific crime of drug trafficking that places somebody in danger of death or harm. You're ignoring all that by saying that it seems to me that this gun found weeks after they had the evidence, which was on June the 3rd, I think, that they had the evidence. He was arrested on June the 17th, and that this is a crime. I mean, isn't it a stretch to say that this gun was used in connection with a drug trafficking crime? Was there any brandishing? Was there any threat? Was there any attempt to use or strike or attempt to fire? All this language is contained in the instruction that the jury is to be given. And, Your Honor, I do think it's included because we've alleged that the possession of the gun is in furtherance of the conspiracy charge, not in furtherance of one of the other charges, actual. 924 does not say that this crime occurred when it's used in furtherance of a conspiracy. It says in relation to a drug trafficking crime. And, well, Your Honor, I guess I would argue, and I'm sorry I don't have case law in front of me. I'm not prepared for this nuance, I guess, of the argument. But I believe that conspiracy is a drug trafficking crime that can be a predicate crime for 924C. And I'm sorry I – The question is, was this gun used in relation to that crime? Well, I'm asserting, Your Honor, that it was because he was protecting the money, which is integral to the conspiracy at the time he was arrested with that gun. He was protecting money. Is that an inference that you're making? Yes, Your Honor. Just because of the proximity of the money to the gun? Yes, Your Honor. Would you have a loaded gun if you were protecting money rather than an unloaded one? You know, Your Honor, I can't explain why the gun is not loaded. But certainly there are lots and lots of crimes where criminals use an unloaded gun for the intimidation factor of it. And I don't believe that there's any requirement under the law that the gun be loaded. I think it is perfectly logical that you would use an unloaded gun as a threat. Now, with respect to the prior conviction then, I believe Mr. Hoskins was, in fact, trying to mislead the jury. That's exactly what he's trying to do in – Let me say something about that. Okay. There is a point with numbers where people brag. For example, if you were talking about a six-figure sum of money or a five-figure sum of money that's $15,000, I wouldn't call you a liar if it was actually $15,031, nor would I call you a liar if it was actually $14,931. Because the trees that go around tie in the same way. If you say, I've been married for 39 years, and actually it's 38 years and 7 months, I wouldn't call you a liar. And it strikes me that this man's use of 17 years is not like that. Well, and I would respectfully disagree with that, Your Honor, because we need to consider the rest of what he said. And to follow your analogy, if you said, I've never been married, and you've been married not quite 39 years, you certainly would be a liar. That would be a liar. And here's what Mr. Hoskin said, and this is at page 17 in our brief, 879.880 of the record. Like all of you heard from all the testimony, nobody buys dope off me, ever. Nobody sees me with the stuff. I am pretty much against it. I admit that I am a small user of the stuff. That's the sentence that comes right before what we've talked about. I may have smoked seven joints in the last 17 years. I am, you know, I'm not, I'm not into the drugs. He throws out the number, and you're right, he gets it wrong. And the mere fact that he gets it wrong doesn't make him a liar. But the overall context certainly does. What you're saying is that he could be understood to be saying not, I haven't sold drugs for 17 years when it's actually 16 years, 7 months, but I've never sold drugs at all, all I've done is use. And that's exactly what he said. Nobody buys dope off me, ever. Nobody sees me with the stuff. And that, of course, is simply a falsehood. And the whole context is, mislead the jury is exactly what he's trying to do. He's trying to say I'm not into the drugs at all, and never have been. And that, of course, isn't true, and that's why we sought to impeach him with it. Mr. Holden asked me before the hearing started why, why I pursued that line in this case. And I would disagree with his assertion that I did it because it's a weak case. And the truth is, I did it in the heat of battle. And in 20-20 hindsight, I may have let that go altogether, but I didn't. I did ask for that impeachment. I do believe it's legitimate impeachment based on what Mr. Hoskins said, not to violate 609, but to show the jury that Mr. Hoskins is trying to mislead you. And this is one way he's doing it. With respect to the cooperating witness, I want to disagree strongly with one other thing that Mr. Holden said. And that's Mr. Holden's characterization of this cooperating witness as the United States' lead cooperating witness. That certainly isn't true at all. In fact, this witness is not a part of this case at all. The witness in question was someone who had given information to the police about Tina Gibson. That information led the police to search Tina Gibson's place to find the safe to talk to Tina Gibson to build the rest of the case. The person who's the witness against Tina Gibson, and I don't even know who it is, was never a witness against Mr. Hoskins, was never contemplated to be a witness against Mr. Hoskins. So when Mr. Hoskins made his motion for exculpatory material or witness information, that person wasn't part of the case at all. Only during the trial did he specify, I wanted this information. Even if he had specified accurately the information prior, however, he wouldn't meet the Rivero and Ninth Circuit tests. The person isn't a close enough witness. He hasn't offered what needs to be offered under the law, that closeness to that case and that relevant information, in order to overcome the hurdle to learn that person's identity. Even without that, however, I did very consciously make sure that I didn't object to any hearsay when Mr. Hoskins' lawyer questioned Detective Lewis about the contents of the affidavit. And Mr. Hoskins' lawyer learns about the witness because we turned over to the defense the affidavit that supported the search of Tina Gibson's residence, where it details what this confidential informant says. Mr. Hoskins then was able to cross-examine Tina Gibson with all of the information that that witness had against Tina Gibson, which was essentially, oh, you're getting your dope from Spokane, not from Shane Hoskins in Butte. Tina Gibson was cross-examined about that. She answered that, yes, she had gone to Spokane. Yes, she had gotten an over there. Yes, she had gotten some dope, but it wasn't in that quantity, and the stuff she was caught with came from Shane Hoskins. So I think Mr. Hoskins here fails on those arguments, which I've characterized in my brief as essentially two arguments, a seeking confidential informant under Riverio as well as a Brady-type argument. The Brady argument fails because the information isn't material. It doesn't impact the integrity of the case, and, of course, how could it when you're able to use that information on cross-examination anyway? I assume you're using the word material in the next court report. I do, Your Honor, in the Brady sense, yes. That is really all I have unless the Court has further questions. Thank you. I would cede the rest of my time to Mr. Holden. Well, my fault. You can't, but go ahead and take a moment anyway. Take 30 seconds or so. With regard to the confidential informant issue, Your Honor, the May 27th confidential informant held key impeachment testimony of Tina Gibson. That confidential informant told Detective Tom Lewis that Miss Gibson had returned from Spokane, Washington, in the end of April 2004 with multiple pounds of methamphetamine and a 1972 Nova. The key phrase was, just scored multiple pounds. On cross-examination, Miss Gibson simply denied that testimony. That confidential informant from May 27th held key exculpatory evidence, material evidence, which would have impeached Miss Gibson's testimony at the trial, and that's the basis for the Brady violation and why Mr. Hoskin should have been given the identity of that confidential informant. With regard, if I may briefly, Your Honor, with regard to the 17-year prior drug conviction, I think it's important for the Court to take a look at the record, which is on excerpts of record 881 and 883. The first part, the Court recognized that it was a 1988 conviction and that the prejudicial value outweighed the probative value until the issue came up. And if it's a 1988 conviction in theory, I think between then and now, there's 16 years past, and Hayes admitted using dope in between. What did he say the last 17 years? Then Mr. Van de Wettering said 17. The Court said, okay, that's a problem. Okay, he said the last 17 years, so, and then Mr. Hoskin's trial counsel got up to argue, and then the Court, he said, well, Judge, I still would argue that, and then the Court said, but he can't get up and say I haven't used dope for 17 years when he had a conviction for cocaine 16 years ago. It wasn't his statement that he was not into drugs. It was a statement that he hadn't used for 17 years, which is the basis for the district court's error in this case.  Thank you, Counsel. United States v. Hoskins is submitted. United States v. Meeks is submitted. Now we'll hear Weiss v. Kupfkrucking. I'd like to make a disclosure about this case. Mr. Kupfkrucking, who surfaced in this case, I believe, last week, in arguing for the truck amicus, was a former law clerk of mine in 1988. I have not seen him since then, I regret to say, but I'm glad to see him now practicing in Cincinnati. I do not believe that affects my ability to be a part of this panel.
judges: Kleinfeld, Graber, Rafeedie